IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| PHOENIX CAPITAL GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 3:16-cv-00299 |
| v. ) | |
| ) | Judge Kevin Sharp |
| WESTERN EXPRESS, INC. (a/k/a ) | Magistrate Judge Barbara Holmes |
| WESTERN LOGISTICS, INC.) and ) | |
| AMAZON.COM, INC., ) | |
| ) | |
| Defendants. ) | |

___

**RESPONSE IN OPPOSITION TO DEFENDANT WESTERN EXPRESS, INC.'S MOTION TO DISMISS**
___

COMES NOW, Phoenix Capital Group, LLC ("Phoenix"), and files this response in opposition to Defendant Western Express, Inc.'s ("Western") Motion to Dismiss (the "Motion"). [Docket Entry No. 11]. Western's Motion acknowledges that Phoenix, as the owner of the accounts receivable of FJ Logistics LLC ("FJ Logistics"), was the proper party to receive payment of amounts owed by Western for services provided by FJ Logistics. Despite recognizing Phoenix's ownership of the accounts, Western asserts that FJ Logistics, as a party that relinquished its ownership interest in the accounts, had the power to release Western from its obligations to satisfy the accounts. Western further asserts that FJ Logistics is an indispensable party to this litigation. Both these arguments must fail.

# I. Introduction[1]

Pursuant to a Factoring Agreement between FJ Logistics and Phoenix, as of April 8, 2014, Phoenix became the absolute and legal owner of any of FJ Logistics' accounts purchased by Phoenix under the Agreement. [Complaint, ¶¶ 7, 9; Ex. A]. As contemplated by the Agreement, Phoenix purchased FJ Logistics' account with Western. [*Id.*, ¶ 11]. Western was notified of the sale of its account, and duly began remitting payment for all amounts due for services provided by FJ Logistics directly to Phoenix starting in 2014 and continuing through the present. [*Id.*, ¶¶ 11-13, Ex. C; *see also* Motion, p. 5, n. 1 (conceding that Western continued to acknowledge Phoenix's right to payment through the beginning of 2016)]. Despite knowing that FJ Logistics did not retain any ownership interest in its account, Western attempted to enter into an agreement with FJ Logistics that purports to release Western from its obligations to fully pay invoices due and owing. [*Id.*, ¶¶ 15-17]. Based on this alleged release, Western partially satisfied outstanding invoices. [*Id.*, ¶ 16]. Phoenix, as the owner of Western's account with FJ Logistics, is seeking to recover the balance due on the invoices that Western attempted to have released without consent from Phoenix.

# II. Argument

## A. Phoenix Has Properly Stated a Claim Against Western.

"[A] complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (internal quotation marks omitted). In the face of a Motion to Dismiss, "[t]he key inquiry is whether the facts in the complaint set out 'a claim to relief that is plausible on its face.'" *Whitney v. City of Milan*, 720 F. Supp. 2d 958, 961 (W.D. Tenn. 2010) (quoting *Bell Atlantic*

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Complaint.

N JLD 1651962 v2
2936018-000001 03/28/2016

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley*, 579 F.3d at 609 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

"In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff." *Swanigan v. Northwest Airlines, Inc.*, 718 F. Supp. 2d 917, 921 (W.D. Tenn. 2010) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor." *Id.* (quoting *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039-40 (6th Cir. 1991)). While not the case with this well-pleaded complaint, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Whitney*, 720 F. Supp. 2d at 961-62 (quoting *Erickson*, 551 U.S. at 93-94) (internal quotation marks omitted).

Western's primary basis for challenging Phoenix's Complaint is that Western cannot have breached any obligation to Phoenix because there is no signed contract between Phoenix and Western. [Motion, p. 4]. However, Western ignores that FJ Logistics assigned to Phoenix all of its rights to receive payment from Western on invoices issued to Western for services performed. [Complaint, ¶¶ 7, 11; Ex. A]. The law is clear that "an absolute assignment divests the assignor of any legal right in the subject property as of the date of the assignment and vests those rights in the assignee. *In re Kingsport Ventures, L.P.*, 251 B.R. 841, 848 (Bankr. E.D. Tenn. 2000) (citing *Nashville Trust Co. v. First Nat. Bank*, 134 S.W. 311, 314 (Tenn. 1911); *American Trust & Banking Co. v. Twinam*, 216 S.W.2d 314, 319 (Tenn. 1948). In *Kingsport Ventures*, a motel-operator assigned its motel rents pursuant to a Deed of Trust, Assignment of Leases and Rents

3

and Security Agreement. *Id.* at 843-44. In a subsequent bankruptcy petition, the motel-operator debtor requested authorization to use the motel rents as cash collateral, arguing that the rents were property of its estate. *Id.* at 845-46. In rejecting the motel-operator's request, the United States Bankruptcy Court for the Eastern District of Tennessee held that because the debtor had absolutely assigned the motel rents prior to the date of the petition, the debtor no longer had any ownership interests in those rents, which were thus no longer property of the debtor's estate. *See id.* at 847-49 ("[T]he Debtor transferred its legal title in the motel revenues to the Assignee when it executed the Assignment long before it filed its bankruptcy petition. From that date forward it had no legal right to that property."). Relatedly, in *Nashville Trust Co.*, upon which the Bankruptcy Court in *Kingsport Ventures* relied, a decedent assigned a life insurance policy in order to create credit against which to borrow. *See id.* at 848 (citing 134 S.W. at 314). As to the effect of the decedent's absolute assignment, the Tennessee Supreme Court held that it:

> [left] no vestige of legal right to [the policy] or [its proceeds] in the decedent. So it was, from the date of the assignment, during his life and at his death. The interest he had in it from the time of the assignment…was an equity, pure and simple, and not a legal right. With this equitable interest as his basis of credit, he contracted the debts shown by the record. If he, during life, had sought to recover the policy, and to cancel his absolute assignment of it without paying these debts, he would have been repelled by a court of equity on the ground that he who would have equity must do equity. *Id.*

Accordingly, from the moment FJ Logistics assigned to Phoenix its rights to the payments from Western on invoices for services performed, FJ Logistics no longer had a single legal interest whatsoever in those contract rights, which instead became the legal property of Phoenix. Importantly, then, FJ Logistics, which had no legal interests in the payments at the time it purported to "re-negotiate" with Western, had no legal authority to do so, and any resulting agreement as against Phoenix is therefore invalid. Instead, as the legal owner of FJ Logistics'

4

contract rights with Western, Phoenix is entitled to the amounts due and owing from Western pursuant to the original terms of FJ Logistics' assignment. Beyond this, while ownership of accounts naturally provides the right to enforce those ownership rights, FJ Logistics expressly affirmed Phoenix's right to enforce its interest. [Complaint, Ex. A, p. 11, ¶ 9 (listing numerous rights granted to Phoenix under the Agreement, including the right to demand, sue for, collect, or release any accounts purchased under the Agreement)]. Phoenix, as the owner of the Obligations, is entitled to pursue Western for the satisfaction of those Obligations.

Western next tries to downplay Phoenix's assertion that Western renegotiated the Obligations without Phoenix's consent despite knowing that Phoenix was the proper owner of the Obligations. [*See* Complaint, ¶¶ 15-17]. Western implies that the reduced payment on the invoices was simply a correction on billing errors. [*See* Motion, p. 5]. In fact, however, the Complaint asserts that FJ Logistics and Western executed an Agreement that purported to change the Obligations that were already due and owing. [Complaint, ¶ 17]. Changing the nature or amount of the Obligations goes beyond simply correcting billing errors, and cannot be done without the consent of the owner of the Obligations.

Phoenix has properly stated that it is the owner of the Obligations, that ownership comes with the right to enforce the Obligations, that Western knew of and acknowledged Phoenix's ownership, and that Western, without a legal basis, has not satisfied the Obligations. Western's Motion should therefore be denied.

**B.     FJ Logistics is Not an Indispensable Party.**

Rule 19 provides guidance for the joinder of persons needed for just adjudication by "establish[ing] guidelines for determining when it is proper to dismiss a case because a person or entity has an interest in the outcome of the litigation that could be impaired in the absence of that

5

person or entity, but joinder of the person or entity [would] deprive the court of subject matter jurisdiction." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 664 (6th Cir. 2004). Courts recognize, though, that dismissal under Rules 12(b)(7) and 19 is not favored. *See, e.g.*, *Drankwater v. Miller*, 830 F. Supp. 188, 191 (S.D.N.Y. 1993) ("As a general rule, in determining whether a party is indispensable, the preference is for non-dismissal . . . Therefore, Rule 19 should be applied narrowly.").

Application of Rule 19 involves a three-step process. *Glancy*, 373 F.3d at 666 (citations omitted). The Court must:

1. Determine whether the person or entity is a necessary party under Rule 19(a);
2. If the person or entity is a necessary party, decide if joinder of that person or entity is feasible (*i.e.*, if the person or entity may be joined without depriving the court of subject matter jurisdiction);
3. If joinder is not feasible because it will eliminate the Court's ability to hear the case, the Court must analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable.

*Id.* (citations and quotations omitted). In short, a person or entity is only indispensable if "(1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee.'" *Id.*

Western only addresses the first step of the three-step process. [Motion, p. 6]. Western asserts that FJ Logistics is a necessary party to this proceeding because it is the only party obligated to Phoenix. However, as is discussed above, that is incorrect. Because FJ Logistics absolutely assigned all of its rights in the Obligations to Phoenix, expressly affirming Phoenix's total authority to exercise those rights, FJ Logistics, as of the moment of its assignment, had no

6

N JLD 1651962 v2
2936018-000001 03/28/2016
Case 3:16-cv-00299   Document 13   Filed 03/28/16   Page 6 of 8 PageID #: 57

legal rights in the Obligations, and is therefore not a necessary party to this action in which Phoenix is validly seeking the amounts due and owing from Western pursuant to the Obligations. *See Kingsport Ventures*, 251 B.R. at 849.

Alternatively, in the very unlikely event that the Court finds that FJ Logistics is a necessary party to this proceeding, Western has still failed to address the remaining two steps. FJ Logistics is a limited liability company that maintains its principal place of business in Des Plaines, Illinois. Upon information and belief, FJ Logistics does not have residential ties to the State of Arizona. Consequently, should the Court determine that FJ Logistics is a necessary party, the proper remedy would be to compel joinder of FJ Logistics rather than to dismiss this case.

### III. Conclusion

Phoenix has properly asserted a cause of action against Western pursuant to the pleading standards of the Federal Rules of Civil Procedure. Accordingly, Phoenix requests that the Court deny Western's Motion to Dismiss.

> Respectfully submitted,
>
> BAKER, DONELSON, BEARMAN
> CALDWELL & BERKOWITZ, PC
>
>
> */s/ John S. Hicks*_____
> John S. Hicks (TN BPR No. 010478)
> Jaime L. DeRensis (TN BPR No. 029796)
> 211 Commerce Street, Suite 800
> Nashville, Tennessee 37201
> (615) 726-7337
> (615) 744-7337 (fax)
> jhicks@bakerdonelson.com
>
> *Counsel for Phoenix Capital Group, LLC*

7

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been served upon the following on March 28, 2016, by electronically filing the same, which will send a notification of filing and copy of the foregoing to all counsel of record:

      Roland M. Lowell
      Rachel Speller
      7135 Centennial Place
      Nashville, Tennessee 37209

      Alexandra Coulter Cross
      1224 6th Avenue North
      Nashville, Tennessee 37208

*/s/ John S. Hicks*_____

N JLD 1651962 v2
2936018-000001 03/28/2016